# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
PETER J. MAGEE,                                         )
                                                        )
                    Plaintiff,                          )
                                                        )
            v.                                          )
                                                        )       Civil Action No. 16-931 (RBW)
AMERICAN INSTITUTE OF CERTIFIED )
PUBLIC ACCOUNTANTS,                                     )
et al.,                                                 )
                                                        )
                    Defendants.                         )
—————————————————————— )

## MEMORANDUM OPINION

The plaintiff, Peter J. Magee, brings this civil action against the American Institute of Certified Public Accountants (the "Institute"); Rebecca Ferris, Francine Calogero, Nancy Miller, Jennifer Goad, and Leonard Hecth, in their official capacities as employees of the Institute's Ethics Division; and Does 1–50,[1] asserting two claims for negligence, a claim for breach of the implied covenant of good faith and fair dealing, and a breach of fiduciary duty claim against the Institute, as well as claims for intentional infliction of emotional distress and negligent infliction of emotional distress against all defendants.  See Complaint ("Compl.") ¶¶ 3–10, 29–58. Currently before the Court is the defendants' Motion to Dismiss ("Defs.' Mot."), which seeks dismissal of the plaintiff's Complaint pursuant to Rule 12(b)(6).  Upon careful consideration of the parties' submissions,[2] the Court concludes that it must grant the defendants' motion to

---

[1] The plaintiff does not identify the roles or identities of Does 1–50, but merely states that he "is presently unaware of the true names of the [d]efendants identified in the Complaint under the fictitious names Does 1–50."  Compl. ¶ 10.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendants' Memorandum in Support of Motion to Dismiss ("Defs.' Mem."); (2) the Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"); and (3) the defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Defs.' Reply").

dismiss all of the plaintiff's claims with the exception of the claim for breach of the implied covenant of good faith and fair dealing against the Institute.

## I.      BACKGROUND

The plaintiff asserts the following in his Complaint.  He is a certified public accountant currently operating an accounting business in Reno, Nevada, and whose clients include Indian tribes, tribal governments, and other tribal entities.  See Compl. ¶¶ 11–12.  He is a longstanding member of the Institute, a professional membership organization comprised of certified public accountants and incorporated as a nonprofit corporation in the District of Columbia.  See id. ¶¶ 4, 19–20.  As a member of the Institute, the plaintiff agreed to subject himself to the rules and procedures of the Institute's Ethics Committee.  See id. ¶ 21.

Beginning in 2006, the Ethics Committee began investigating the services the plaintiff provided to a tribal client in California that was undergoing a federal audit.  See id. ¶ 23.  "The Ethic's Committee's concern was [the plaintiff's] use of language in the audit and inclusion or non-inclusion of related audit documentation, requested specifically by the [t]ribal client."  Id.  This investigation is based out of the Institute's North Carolina offices.  See Def.'s Mem. at 1.  As a result of the investigation, the plaintiff has been under the oversight of the Ethics Committee for ten years, but the matter has not yet been resolved, nor has the Ethics Committee afforded the plaintiff a hearing to dispute the allegations.  See Compl. ¶¶ 23–24.  According to the plaintiff, he

> has been subjected to increased levels of [Institute] scrutiny by the Ethics Committee and threatened with gestapo like tactics that included, but are not limited to, "take it or leave it" ethical resolution proposals subjecting [him] to additional Ethics Committee scrutiny and in which [he] was told he must acquiesce or face increasing scrutiny and[/]or discipline by the Ethics Committee; use by the Ethics Committee of documents provided by [him] of which the Ethics Committee would fabricate additional sanctions, concerns and generate additional correspondences and document requests for [his] response . . . .

2

Id. ¶ 24.

The plaintiff filed his Complaint on May 17, 2016, see id. at 1, asserting the various common law claims against the defendants arising out of their investigation and discipline of the plaintiff, see id. ¶¶ 32–34, 37–38, 43–44, 47–48, 50–53, 55–58.  The defendants filed their motion to dismiss on June 24, 2016.  See Defs.' Mot. at 1.

## II.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556); see also Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged").  Although the Court "must treat the complaint's factual allegations as true [and] must grant [the] plaintiff the benefit of all reasonable inferences from the facts alleged," Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (alteration in original) (citation omitted), legal allegations devoid of factual support are not entitled to this assumption, see, e.g., Kowal, 16 F.3d at 1276.  Moreover, a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action." Hinson ex rel. N.H. v. Merritt Educ. Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting Twombly, 550 U.S. at 555).

### III.   ANALYSIS

**A.   Choice of Law**

Although the defendants are the only party who briefed the question as to which jurisdiction's law applies in this diversity of citizenship matter, all parties rely on District of Columbia law in their submissions to the Court.  See Defs.' Mem. at 2–5; Pl.'s Opp'n at 2–6. "When deciding state-law claims under diversity . . . jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit."  Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 857 (D.C. Cir. 2006) (citations and internal quotation marks omitted).  And, the choice-of-law rules in the District of Columbia dictate that "the [C]ourt must first determine if there is a conflict between the laws of the relevant jurisdictions."  Parnigoni v. St. Columba's Nursery Sch., 681 F. Supp. 2d 1, 12 (D.D.C. 2010) (Walton, J.) (alteration in original) (citation omitted). If no conflict exists, District of Columbia law applies by default.  See Brown v. Dorsey & Whitley, LLP, 267 F. Supp. 2d 61, 70 (D.D.C. 2003).

With the exception of the negligent infliction of emotional distress claim, the elements for each claim asserted by the plaintiff are the same in the District of Columbia, Nevada, and North Carolina, the three jurisdictions that have some connection with this case.  The elements of a negligence claim in all three jurisdictions are (1) duty, (2) breach, (3) causation, and (4) damages.  Compare Powell ex rel. Ricks v. District of Columbia, 634 A.2d 403, 406 (D.C. 1993) (providing the elements of negligence in the District of Columbia), with Gibson v. Ussery, 675 S.E.2d 666, 668 (N.C. Ct. App. 2009) (providing the elements of negligence in North Carolina), and Sadler v. PacifiCare of Nev., 340 P.3d 1264, 1267 (Nev. 2014) (providing the elements of negligence in Nevada).  To establish a claim for intentional infliction of emotional distress in the three jurisdictions, a plaintiff must plead that: (1) the defendant acted in an extreme and

outrageous manner, (2) either intentionally or recklessly, which (3) caused the plaintiff severe emotional distress.  Compare Ortberg v. Goldman Sachs Grp., 64 A.3d 158, 163 (D.C. 2013) (stating the elements of intentional infliction of emotional distress in the District of Columbia), with Turner v. Thomas, 794 S.E.2d 439, 446 (N.C. 2016) (stating the elements of intentional infliction of emotional distress in North Carolina), and Nelson v. City of Las Vegas, 665 P.2d 1141, 1145 (Nev. 1983) (stating the elements of intentional infliction of emotional distress in Nevada).  For breach of fiduciary duty claims, each jurisdiction requires that (1) a fiduciary relationship exists between the parties, and (2) the defendant breached that duty.  Compare Gov't of Rwanda v. Rwanda Working Grp., 227 F. Supp. 2d 45, 64 (D.D.C. 2002) (stating the elements for breach of fiduciary duty in the District of Columbia), with White v. Consol. Planning, Inc., 603 S.E.2d 147, 155 (N.C. Ct. App. 2004) (stating the elements of breach of fiduciary duty in North Carolina), and Stalk v. Mushkin, 199 P.3d 838, 843 (Nev. 2009) (stating the elements of breach of fiduciary duty in Nevada).  Finally, to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract.  Compare Mero v. City Segway Tours of Wash. D.C., LLC, 826 F. Supp. 2d 100, 106 (D.D.C. 2011) (stating the elements of breach of the implied covenant of good faith and fair dealing in the District of Columbia), with Williams v. Craft Dev., LLC, 682 S.E.2d 719, 723 (N.C. Ct. App. 2009) (stating the elements of breach of the implied covenant of good faith and fair dealing in North Carolina), and Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (Nev. 1991) (stating the elements of breach of the implied covenant of good faith and fair dealing in Nevada).  Consequently, because no true conflict exists between

the applicable laws of Nevada, North Carolina, or the District of Columbia with respect to the aforementioned claims, the Court will apply the law of the District of Columbia.

For claims of negligent infliction of emotional distress, both the District of Columbia and North Carolina require a plaintiff to plead that: (1) the defendant owed a duty or held a relationship with the plaintiff; (2) the defendant engaged in conduct that would foreseeably cause the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff severe emotional distress.  Compare  Sibley v. St. Albans Sch., 134 A.3d 789, 797–98 (D.C. 2016) (stating the elements of negligent infliction of emotional distress in the District of Columbia), with Acosta v. Byrum, 638 S.E.2d 246, 250 (N.C. Ct. App. 2006) (stating the elements of negligent infliction of emotional distress in North Carolina).  In Nevada, however, in order for a plaintiff to assert a negligent infliction of emotional distress claim, a plaintiff must plead that he "suffer[ed] 'serious emotional distress which result[ed] in physical symptoms caused by apprehending the death or serious injury of a loved one due to the negligence of the defendant.'" Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998) (quoting Chowdry v. NLVH, Inc., 851 P.2d 459, 462 (Nev. 1993)).

Because a conflict exists regarding the elements a plaintiff must plead to allege a negligent infliction of emotional distress claim, in deciding which jurisdiction's law controls, the Court "must determine which jurisdiction has the most significant relationship to the claims being pursued by the plaintiff[]." Parnigoni, 681 F. Supp. 2d at 12.  In making this determination, the Court must consider the following factors: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered." Id. (quoting District of Columbia v. Coleman, 667

A.2d 811, 816 (D.C. 1995)).  Upon consideration of these factors, the Court concludes that North Carolina law must be applied to the plaintiff's negligent infliction of emotional distress claim for the following reasons.  The place where the injury occurred is Nevada, where the plaintiff resides and conducts his business.  See Compl. ¶¶ 3, 11.  The place where the conduct causing the plaintiff's alleged injury occurred is North Carolina, because the Institute's investigation of the plaintiff is based in its North Carolina office.  See Defs.' Mem. at 1.  The plaintiff's domicile and place of business is Nevada, see Compl. ¶¶ 3, 11, while the Institute's place of incorporation is the District of Columbia, and the place of business of its Ethics Division is North Carolina, see Defs.' Mem. at 1.  Finally, the place where the relationship is centered is North Carolina, because that is where the investigation of the plaintiff is taking place.  See id.  Considering these four factors collectively, the Court concludes that North Carolina has the greatest interest regarding this claim, because that is the jurisdiction where the conduct causing the injury occurred, and that conduct is the underlying basis for the plaintiff's negligent infliction of emotional distress claim.  The Court must therefore apply North Carolina law to this claim.

**B.      The Plaintiff's Negligence Claims**

As noted above, to state a claim for negligence, the plaintiff must allege that the Institute breached a duty of care owed to the plaintiff, and that the plaintiff suffered damages proximately caused by that breach.  See Powell, 634 A.2d at 406.  The Institute argues that the only duty it owes the plaintiff is contractual in nature because, under District of Columbia law, the Institute's formal bylaws are "construed as a contractual agreement between the organization and its members."  See Defs.' Mem. at 4 (quoting Meshel v. Ohev Sholom Talmud Torah, 869 A.2d 343, 361 (D.C. 2005)).  According to the Institute, because the plaintiff cannot establish that it owed him a duty independent of the bylaws, the plaintiff has failed to state a claim for

negligence.  See id.  In response, the plaintiff argues that his negligence claims should not be

dismissed at this stage because the plaintiffs' claims asserted against a voluntary organization in

Jolevare v. Alpha Kappa Alpha Sorority, Inc., 521 F. Supp. 2d 1 (D.D.C. 2007) (Walton, J.),

proceeded to the summary judgment stage.  See Pl.'s Opp'n at 3–4.

   In Jolevare, two members of the Alpha Kappa Alpha Sorority who had been suspended

"for alleged acts of hazing" brought an action against the sorority, alleging violations of the

District of Columbia Human Rights Act, breach of contract, defamation, and negligence.  521 F.

Supp. 2d at 2.  The plaintiffs asserted that the sorority "had a duty to abide by its own policies

and procedures regarding the investigation and/or resolution of allegations of hazing," which the

sorority allegedly breached "when it suspended [the] plaintiffs in contravention of its own

policies and procedures."  Id. at 14 (alteration in original).  Unlike this case, the defendant in

Jolevare did not file a motion to dismiss, see generally Civil Docket for Case #: 1:05-cv-01982-

RBW, https://ecf.dcd.circdc.dcn (last visited Mar. 22, 2017), and in granting the sorority's

summary judgment motion, the Court noted the following:

> "The foundation of modern negligence law is the existence of a duty owed
> by the defendant to the plaintiff.  Negligence is a breach of duty; if there is no duty,
> there can be no breach, and hence no negligence."  N.O.L. v. District of Columbia,
> 674 A.2d 498, 499 n. 2 (D.C. 1995) (citing Palsgraf v. Long Island R.R., 248 N.Y.
> 339, 162 N.E. 99 (1928)).  Thus, "[o]ne of the essential elements of a cause of
> action in negligence is that the conduct complained of invaded some interest of the
> plaintiff which, by virtue either of statute or of the common law, is entitled to
> protection as against the defendant."  Wooldridge Mfg. Co. v. United States, 235
> F.2d 513, 513 (D.C. Cir. 1956).  The existence of a legal duty being an essential
> element of a negligence claim under District of Columbia law, the plaintiffs "must
> specify a negligent act and characterize the duty whose breach might have resulted
> in negligence liability."  District of Columbia v. White, 442 A.2d 159, 162 (D.C.
> 1982) (quoting Kelton v. District of Columbia, 413 A.2d 919, 922 n. 5 (D.C. 1980));
> see also Pied Piper, Inc. v. Datanational Corp., 901 F. Supp. 212, 215 (S.D.W.Va.
> 1995) (dismissing negligence claim for failure to state a claim because the plaintiff
> failed to establish the existence of a legal duty between two business entities dealing
> with each other at arm's length).  And a complaint alleging negligence may not rest
> on mere "conclusory assertions" as to the existence of any element of the claim,

including duty.  <u>White</u>, 442 A.2d at 162.  Thus, the "plaintiff must allege facts
which show that the defendant breached some legally imposed duty owed to the
plaintiff," <u>id.</u>, which the plaintiffs have failed to do.

<u>Jolevare</u>, 521 F. Supp. 2d at 15.

Here, similar to the failing of the plaintiffs in <u>Jolevare</u>, the plaintiff has not demonstrated

in his Complaint that the Institute owed him any legally recognized duty.  <u>See id.</u>; <u>see also</u>

Compl. ¶¶ 20–21 (alleging only that the plaintiff (1) has been an Institute member since 1993,

(2) has been a member of various Institute sub-groups, (3) holds sub-licenses provided by the

Institute, and (4) "agree[d] to subject [himself] to the rules and procedures of the [Institute's]

Ethics Committee").  The plaintiff alleges in his Complaint that the Institute "owed [him] a duty

to determine the facts surrounding the 2006 [Ethics Committee] Inquiry and what discipline was

reasonable, if any w[as] necessary, []to protect the integrity that is inherent in the accounting

profession," Compl. ¶ 30, as well as "a duty to determine whether the change in the language

requested by the [plaintiff's tribal client] was actually language that would materially affect the

outcome of the [client's federal a]udit," <u>id.</u> ¶ 36.  The plaintiff "does not, however, allege[] any

[legal] basis for this purported duty, and this Court does not find one."  <u>Wanko v. Catholic Univ.</u>

<u>of Am.</u>, Civil Case No. 08-2115, 2009 WL 3052477, at *6 (D.D.C. Sept. 22, 2009).

The plaintiff concedes as much, stating that he "intends to conduct discovery to procure

evidence of duty."  Pl.'s Opp'n at 3–4.  However, the Court fails to appreciate what facts would

show the existence of a duty owed to the plaintiff that could possibly be disclosed through

discovery, and the plaintiff has not offered any explanation of what he expects to discover that

would aid the Court in making that assessment.  <u>See</u> <u>In re Sealed Case</u>, 67 F.3d 965, 968 (D.C.

Cir. 1995) ("The existence of . . . a legal duty owed by the defendant to the plaintiff[] is a

question of law, to be determined by the court."); <u>see also</u> <u>Woods v. District of Columbia</u>, 63

A.3d 551, 552–53 (D.C. 2013) (noting that, "[t]o survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim").  Consequently, the Court concludes that the plaintiff has failed to state any claims for negligence.  The Court must therefore dismiss both counts of negligence.

**C.      The Plaintiff's Negligent Infliction of Emotional Distress Claim**

To adequately plead a claim for negligent infliction of emotional distress under North Carolina Law, see supra Part III.A, a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress."  See Acosta, 638 S.E.2d at 250.  "The first element of a[] [negligent infliction of emotional distress] claim requires allegations that the 'defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances[.]"  Horne v. Cumberland Cty. Hosp. Sys., Inc., 746 S.E.2d 13, 19 (N.C. Ct. App.  2013) (quoting Guthrie v. Convoy, 567 S.E.2d 403, 410 (N.C. Ct. App. 2002)).  Again, the plaintiff fails to plead any legally recognized duty to which any of the defendants owe him.  See supra Part III.B.  Instead, the plaintiff pleads merely in conclusory terms that the defendants breached their duty "to treat [the plaintiff] fairly, swiftly, and conclusively."  Compl. ¶ 55.  Because the plaintiff has failed to plead facts plausibly showing that the defendants owed him a legal duty independent of the organization's bylaws, the plaintiff has failed to make a prima facie case of negligent infliction of emotional distress, and thus, the Court must dismiss this claim as well.  See Horne, 746 S.E.2d at 19 (affirming the trial court's dismissal of the plaintiff's negligent infliction of emotional distress claim where the defendant failed to reference any legal duty owed by the defendant).[3]

---

[3] The plaintiff also fails to provide specific factual allegations regarding his alleged severe emotional distress,

(continued . . . )

**D.    The Plaintiff's Breach of Fiduciary Duty Claim**

For breach of fiduciary duty claims, each jurisdiction requires that (1) a fiduciary relationship exists between the parties, and (2) the defendant breached that duty.  See Gov't of Rwanda, 227 F. Supp. 2d at 64.  "As a general rule, the mere existence of a contract does not create a fiduciary duty . . . [, but] [a] fiduciary relationship could exist, however, where circumstances show that the parties extended their relationship beyond the limits of the contractual obligations to a relationship founded upon trust and confidence."  Paul v. Judicial Watch, Inc., 543 F. Supp. 2d 1, 6 (D.D.C. 2008); see also Bolton v. Crowley, Hope & Fein, P.C., 110 A.3d 575, 584 (D.C. 2015) ("A fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." (quoting Gov't of Rwanda, 227 F. Supp. 2d at 64)).  "While fiduciary relationships can be difficult to define, and may very well exist between contracting parties, '[o]ne characteristic that District of Columbia courts have traditionally looked for is a special confidential relationship that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind.'"  Ying Qing Lu v. Lezell, 919 F. Supp. 2d 1, 6 (D.D.C. 2013) (quoting High v. McLean Fin. Corp., 659 F.Supp. 1561, 1568 (D.D.C.1987)).

Here, the defendants argue again that the relationship between the Institute and the plaintiff is solely based on the Institute's bylaws, and thus no fiduciary relationship exists

---

( . . . continued)

pleading only in conclusory terms that the defendants' actions have "resulted in severe emotional distress for [the plaintiff], his business and his family."  Compl. ¶ 25.  North Carolina law requires plaintiffs to provide factual allegations regarding "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition."  Horne, 746 S.E.2d at 20.  In Horne, the Court of Appeals of North Carolina affirmed the trial court's dismissal of the plaintiff's negligent infliction of emotional distress claim because the plaintiff's complaint did not contain "any factual allegations regarding the type, manner, or degree of severe emotional distress [the plaintiff] claims to have experienced[, and i]n the absence of such allegations, [the] plaintiff's complaint fails to state a valid claim for [negligent infliction of emotional distress]."  Id.  Consequently, the plaintiff's claim of negligent infliction of emotional distress also fails due to the lack of allegations regarding the type of emotional distress allegedly suffered by the plaintiff.

independent of that contractual relationship.  See Defs.' Mem. at 3–4.  The plaintiff responds that

the "[d]efendants have cited to no authority that prohibits a member of an association from suing

that association for breach of fiduciary duty."  Pl.'s Opp'n at 6.  The Court agrees with the

defendants.

The plaintiff's breach of fiduciary duty claim must fail for the same reason that the

plaintiff's negligence and negligent infliction of emotional distress claims fail—the plaintiff has

failed to demonstrate that the Institute owed him any legally recognized duty.  In his Complaint,

the plaintiff alleges that he

> reposed trust and confidence in the [Institute] to act in the best interests of the
> profession and him.  [He] agreed to the [Institute's] Ethical requirements due to its
> advice, superior knowledge and expertise.  [He] also provided the Ethics
> Committee numerous documents and has cooperated with the [Institute's] Ethics
> Committee inquiry based on his trust and confidence in the [Institute].

Compl. ¶ 46.  The Court concludes that the plaintiff's allegations of the "trust and confidence"

that he contends he placed in the Institute to act in his best interests amounts to "legal

conclusions [of fiduciary duty] cast in the form of factual allegations."  See Kowal, 16 F.3d at

1276; see also Bolton, 110 A.3d at 584 ("A fiduciary relationship is founded upon trust or

confidence reposed by one person in the integrity and fidelity of another." (quoting Gov't of

Rwanda, 227 F. Supp. 2d at 64)).  The plaintiff cites no case law, nor could the Court find any,

that supports the proposition that a professional membership organization owes any fiduciary

duty to its members.  Accordingly, the Court must dismiss the plaintiff's breach of fiduciary duty

claim.[4]

---

[4] The defendants also argue that the plaintiff's breach of fiduciary duty claim must be dismissed because, rather than
"attempting to bring a claim for a breach of fiduciary duty by any officer or director," the plaintiff "improperly
attempts to state [his] claim against the [Institute] . . . [, and that e]ven if the claim for breach of fiduciary duty was
properly articulated against a corporate director, such duties are derivative and would have to be brought on behalf
of the association."  Defs.' Mem. at 4.  The Court finds that this argument misses the mark because the plaintiff's
breach of fiduciary duty claim is not, from the Court's perspective, intended to be a derivative claim in which the

(continued . . . )

**E.**     **The Plaintiff's Intentional Infliction of Emotional Distress Claim**

In order to establish a claim for intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant[,] which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." Ortberg, 64 A.3d at 163 (quoting Baltimore v. District of Columbia, 10 A. 3d 1141, 1155 (D.C. 2011)). "Liability will only be imposed for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. (quoting Homan v. Goyal, 711 A.2d 812, 818 (D.C. 1998)). The District of Columbia Court of Appeals has made clear that "no liability can be 'imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,'" id. (quoting Homan, 711 A.2d at 818), and "[a]s a result, '[t]he requirement of outrageousness is not an easy one to meet,'" id. (quoting Drejza v. Vaccaro, 650 A.2d 1308, 1312 (D.C. 1994)).

Here, the plaintiff has alleged that the defendants have placed him under Ethics Committee oversight for over ten years, without affording him a hearing, and that he has been "threatened with gestapo like tactics that included, but are not limited to, 'take it or leave it' ethical resolution proposals subjecting [him] to additional Ethics Committee scrutiny." Compl. ¶ 24. In addition, the plaintiff alleges that the Ethics Committee's investigation "has resulted in hundreds of hours in business costs to respond to duplicative and never ending Ethics Committee production requests, copy time[,] and now attorney fees and costs," and that "this ten [ ] years of

---

( . . . continued)

plaintiff asserts his claim on behalf of the Institute; rather, the plaintiff claims that the Institute itself owed a fiduciary duty to him as a member of the Institute. See Compl. ¶¶ 46–47; see also Pl.'s Opp'n at 6 (noting that the plaintiff brings his claim against the Institute as "a member of an association").

baseless harassment . . . with no end in sight, has resulted in severe emotional distress for [him], his business and his family." Id. ¶ 25.

The Court concludes that this claim must fail because the defendants' alleged conduct is not sufficiently extreme and outrageous. Illustrations of the type of conduct a plaintiff must allege in order to pursue a claim of intentional infliction of emotional distress are found in two District of Columbia Court of Appeals cases in which employees became the targets of their employers' investigations, and the employers allegedly manufactured and publicized false evidence against the employees. In both cases, the Court found that the alleged conduct by the employers did not constitute extreme and outrageous conduct for purposes of a claim of intentional infliction of emotional distress. First, in Kerrigan v. Britches of Georgetown, Inc., the Court affirmed the grant of summary judgment on the plaintiff's claim for intentional infliction of emotional distress even though the plaintiff alleged that her former employer had "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager." 705 A.2d 624, 628 (D.C. 1997). Second, in Grimes v. District of Columbia, Business Decisions Information, Inc., the Court affirmed the trial court's dismissal of the plaintiff's claim for intentional infliction of emotional distress despite the plaintiff's claim that the defendant "knowingly wrote a false report suggesting that [the plaintiff] was not entitled to workers' compensation benefits and published that report to others." 89 A.3d 107, 114 (D.C. 2014).

Although the plaintiff is not an employee of the Institute, the Court concludes that the relationship between him and the Institute as related to the Ethics Committee's investigation of him and the factual basis for his intentional infliction of emotional distress claim are similar to

the circumstances alleged in <u>Kerrigan</u> and <u>Grimes</u>, where the District of Columbia Court of Appeals held in both cases that the facts alleged did not rise to the level of extreme and outrageous conduct. In fact, the facts in those cases are arguably more egregious than those alleged by the plaintiff here, because in those cases, the plaintiffs alleged that the defendants fabricated false evidence, <u>see</u> <u>Grimes</u>, 89 A.3d at 114; <u>Kerrigan</u>, 705 A.2d at 628, released the false information to others, <u>see</u> <u>Grimes</u>, 89 A.3d at 114; <u>Kerrigan</u>, 705 A.2d at 628, and in <u>Kerrigan</u>, the plaintiff was allegedly subjected to sexual harassment, <u>see</u> 705 A.2d at 628. In this case, on the other hand, as noted earlier, the plaintiff alleges only that the defendants have not provided him with an opportunity to contest the allegations against him or resolve the matter, resulting in him having to expend substantial time and resources "to respond to duplicative and never ending Ethics Committee production requests, copy time and now attorney fees and costs . . . , [and that] this ten [ ] years of baseless harassment [ ] with no end in sight, has resulted in severe emotional distress for [him], his business and his family." Compl. ¶¶ 24–25. Although if true, the conduct is reprehensible, it cannot be construed, considering what was found insufficient in <u>Grimes</u> and <u>Kerrigan</u>, as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." <u>See</u> <u>Ortberg</u>, 64 A.3d at 163 (quoting <u>Homan</u>, 711 A.2d at 818). Accordingly, the Court must dismiss the plaintiff's intentional infliction of emotional distress claim.

**F.      The Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

The plaintiff alleges that an implied covenant of good faith and fair dealing exists between him and the Institute as a result of his membership with the organization, and that the Institute breached that covenant. <u>See</u> Compl. ¶¶ 40, 43. The Institute agrees that the plaintiff

and the Institute had a contractual relationship, noting that "[i]t is well established that the formal bylaws of an organization are to be construed as a contractual agreement between the organization and its members."  Defs.' Mem. at 4 (quoting Meshel, 869 A.2d at 361).

"[A]ll contracts contain an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000) (quoting Hais v. Smith, 547 A.2d 986, 987 (D.C. 1988)).  "If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing."  Id.  The District of Columbia Court of Appeals has adopted the Second Restatement of Contracts' interpretation of "good faith" as "emphasiz[ing] faithfulness to an agreed common purpose and consistency with the justified expectations of the other party [while] exclud[ing] a variety of types of conduct characterized as involving 'bad faith' because they violate standards of decency, fairness or reasonableness."  Allworth v. Howard Univ., 890 A.2d 194, 201–02 (D.C. 2006) (quoting Restatement (Second) of Contracts § 205 cmt. a).  That Court has also "determined that 'fair dealing' involves reasonable rather than arbitrary or capricious action."  Id. at 202.

The Institute argues that the plaintiff has failed to "plead the proper elements" of a breach of the implied covenant of good faith and fair dealing claim because none of the plaintiff's "allegations against the [Institute] rise to the level of prosecuting its Ethics rules in bad faith, or in an arbitrary and capricious manner."  Defs.' Mem. at 5.  The Court disagrees.

The plaintiff alleges that the Institute breached the implied covenant of good faith and fair dealing by

[(1)] failing to conduct a thorough and fair investigation before wrongfully accusing [him] of an [e]thical violation[; (2)] disciplining [him] without due process according to [the Institute's] own policies and procedures[; (3)] failing to provide [him] substantive and procedural due process protections and depriving him of fundamental fairness[; and (4)] subjecting [him] to ten [ ] years of Ethics Committee oversight.

Compl. ¶ 43.

In other words, the plaintiff, in addition to alleging other acts of misconduct, contends that the Institute failed to follow its own policies and procedures in its investigation and oversight of the plaintiff, thus depriving him of the procedural protections of membership.  See id.  The Court concludes that these allegations, which the Court must accept as true for purposes of the motion to dismiss, constitute sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, because the Institute's alleged failure to follow its own procedures could be considered unreasonable or arbitrary and capricious, see Levant v. Whitley, 755 A.2d 1036, 1043–44 (D.C. 2000) (assuming without deciding that the Court's intervention into the internal affairs of a voluntary association "would be appropriate when an organization fail[s] to follow its own rules"); cf. Daley v. Alpha Kappa Alpha Sorority, Inc., 26 A.3d 723, 731 (D.C. 2011) (overturning the trial court's dismissal of the plaintiffs' breach of contract claim because the plaintiffs, members of the Alpha Kappa Alpha Sorority, "have clearly spelled out both the alleged wrongdoings committed with regard to an organization of which they are members and the requested relief").  Consequently, the Court denies the defendants' motion to dismiss the plaintiff's breach of implied covenant of good faith and fair dealing claim against the Institute.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss with respect to the plaintiff's breach of fiduciary duty and negligence claims against the Institute, as

well as the plaintiff's negligent infliction of emotional distress and intentional of emotional

distress claims against all of the defendants, but denies the defendants' motion to dismiss the

plaintiff's breach of the implied covenant of good faith and fair dealing claim against the

Institute.[5]

      **SO ORDERED** this 29th day of March, 2017.[6]


REGGIE B. WALTON
United States District Judge

---

[5] In the plaintiff's opposition to the defendants' motion to dismiss, he "requests leave to amend his complaint to address any pleading deficiencies identified by the Court." Pl.'s Opp'n at 7. Local Rule 7(i) states that "[a] motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended." The Court is unable to assess the merits of the plaintiff's request for leave to amend his Complaint because he failed to file a motion for leave to amend or attach a proposed amended complaint as required by Local Rule 7(i), and thus denies the plaintiff's request for leave to amend. See, e.g., Banks v. Kramer, 603 F. Supp. 2d 3, 6–7 (D.D.C. 2009) (denying the plaintiff's motion for leave to amend his complaint because the plaintiff failed to comply with Local Rule 7(i)).

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.